Okay, the next argued case is number 151707, SmartFlash LLC against Samsung Electronics Company. Mr. Verhoeven. May it please the court. Our case is similar to the case you just heard with the biggest difference being that Samsung and HT have not gone to trial. So looking forward, Samsung and HTC have a huge burden in front of them. They have to ship witnesses across the world to come try the case. They have to organize witnesses. As we all know, a trial itself composes the largest expense of handling litigation at the district court level. Oftentimes, in fact, law firms give budgets all the way to pre-trial and have a whole separate budget for trial because it's so much more expensive, especially in a case of this magnitude. So when you're... It seems to me there's overlap between the cases. I mean, I know Judge Gilchrist had four separate cases. He stayed two and didn't stay two. And with respect to Samsung, aside from the fact that the trial is set for August, right, he said that you all had agreed that there were a lot of the questions that were decided in Apple that would apply to the court. The court handled both cases together for many of the issues during the pre-trial, but there had to be separate trials in this case under the AIA, Your Honor. So we were all set for the same dates. But what I was actually getting at, Your Honor, is the history relating to the filing of CBM petitions. Samsung and HCC also moved to stay along with Apple, and we represented that we would be bound, would be bound by the results of Apple's petitions. And so we placed ourselves in that same position and told the court in May 14th, 2015, before depositions had started, before expert... But those weren't 101. Those were not 101, but they were based on 102 and 103, Your Honor. I want to... One of the things I think... But that's right. The motion before is only related to the 101. That's true. That's true, Your Honor. But as we all know, Alice wasn't decided until after those CBMs were filed, Your Honor. And I think it's telling that we, the Samsung HT defendants, we filed a motion for summary reasonableness. And in opposition, the plaintiff said that our 101 defense did not even pass the objectively reasonableness test. And the court agreed, and that was pre-Alice. It said pre-Alice, you didn't even have an objectively reasonable basis to assert 101. And then the court's order denying the stay, we were taken to task for not including 101 in our CBMs pre-Alice. Right. But, I mean, that's all interesting background, but that's not what the issue is here. The issue is, as of these CBM reviews and these motions to stay, which are the only motions on appeal, what were the circumstances and whether a stay is appropriate? Well, we filed those, we believe, reasonably diligent after the Alice decision, Your Honor. We did not file them on 101 before the Alice decision. And I agree with Mr. Perry that it wouldn't have been wise to do that while the Supreme Court was considering all of that. We were waiting to see what would happen. And once the decision came out, we had a lot of things going on. It takes a lot of work to prepare these CBMs. We were under deadlines from the district court, but we worked and got those on file in a few months, Your Honor. And I'll note that in the NFC case, Judge Bryson noted that seven months was not a reasonable amount of time to take to prepare these things. So we tried to do that diligently. All right, so let's go back to my original question. Yes, Your Honor. And that is, so there is a trial. I get that. August 3rd. But, so are you telling me that basically all the pretrial rulings that applied to Apple applied to you all and that that's all done? No, we have a separate pretrial, Your Honor. The pretrial, they separated the pretrial stage. And so there are separate proceedings and those proceedings are largely done, to be frank. We're still dealing with issues, the pretrial issues you deal with as you're leading up to trial. What issues remain? What pretrial issues remain? Well, we have a big issue because of the ruling on damages in the Apple case. And so we don't know yet. We're digesting that. But the same damages model, a very similar damages model, not substantially different, is involved in our case. And the same answer that you heard from Mr. Perry applies to us on that. There may need to be a whole new redo by the plaintiffs, both sort of in their court, on damages because the ruling by the district court just a few days ago on that. So it's hard to say how much more will be done on that. Apart from that, just evidentiary rulings and then the burden and expense of setting up a whole trial site down in Texas and flying up witnesses from Asia, Your Honor, which would be highly burdensome for us. So we are pretty much down to the trial and the evidentiary rulings that occur at trial? Pretty much, Your Honor. Okay. I'm just trying to think. But that is a huge expense, maybe a third of the total expense. I'm not discounting that trial is important. I just want to know what we're talking about. I think it's important to remember that here all of the asserted claims have been found invalid preliminarily by the PTAB. And the PTAB, as Mr. Perry said, since Alice has been remarkably consistent 100% of the time. And I think that's because the standard to initiate is very similar to the ultimate standard. It's not a substantial new question or whatnot. You have to be more likely than not. And you'll see that it's hard, if you look at, there's a lot of denials of institution. So people are taking their best shot, taking a lot of time to prepare really good petitions, Your Honor. But once those petitions are granted, 100% of the time after Alice, those have been followed through and finaled. And if you look at factors one and four, there's just no question that in the Samsung HTC case, it will simplify the issues. It'll make the case go away entirely. We can't just ignore factors two. No, we can't. Congress didn't assume that just because CBM is granted, there would always be a stay. Because it didn't say that. I mean, yes, it's clear that Congress contemplated that in most cases there would be a stay. But it didn't say there would always be a stay. And one of the factors we're supposed to look at is how far down the road have we gone? And is discovery completed? Is trial set? And in your case, both of those things are true. I think if you look at virtual agility in the Versada case, in both those cases... Are you citing the vacated Versada? Yes, I am, Your Honor. I don't think you can cite a vacated Versada. I was just going to reference the analysis that the court went through. I won't do that. I acknowledge it's not binding precedent. But the panel did think it was issuing a binding... My understanding is they weren't informed that there was a settlement. And that's why it was vacated afterwards. But just looking at virtual agility then. The court looked and there was an argument. When do you measure under prong two? And the court said you look to when the motion to stay was filed. Now here, unlike virtual agility, I'll admit, Your Honor, that that specific ground of 101 wasn't in the first round of CBMs. That's because Alex hadn't been decided yet. If Alex had been decided, there's no question that we would have included that in our CBMs. It's not like we chose to ignore Alex. We're talking about the spring. You're getting back into the equities. I understand there were some equitable issues that the court had. I'm getting to the second prong and whether there's a tactical advantage, Your Honor. That's the fourth prong. Let's talk about the second prong. Okay, Your Honor. Well, Your Honor, Alex comes out. We didn't choose when it came out. We acted diligently after it came out to file these. And there's absolutely no question, Your Honor, that going forward, this would simplify the issues. A trial would cost millions of dollars. Two trials, both Apples and ours, they have to retry on damages. It's clear that it would be more efficient to proceed as Congress intended by once these things are instituted, going with the patent office on a single issue at a fraction of the cost. You won't have to litigate all these other issues. The plaintiff here is an MPE. The district court found, and it really can't be disputed, this is about money. So if they wait a little bit longer to get their money, if they're going to prevail, there's no prejudice there. I don't think it's fair to take Apple, Samsung, or HD to task for not anticipating that Alice would come out and predicting it and filing a 101 earlier. We did it reasonably soon after it came out. There's no evidence that there's any tactical advantage here that we were seeking. We were simply exercising our rights to file petitions. We asked to stay. The court said we couldn't stay. And so the result was parallel proceedings. We didn't choose parallel proceedings. We asked the court in May 14th, after the petitions got filed, to just do one procedure. My comment, Hogan, is that you only want to talk about one factor. It's tactical advantage. And I understand that there's an equitable overlay, but there are three other factors. And so can we talk about those? Yes, Your Honor. So simplification of the issues going forward. As the cases have said, when you have a 101 granted and all the claims, it's the ultimate simplification of the issues, Your Honor. So I would submit simplification of the issues, and factor one is completely met, and that it was error for the district court to find that it wasn't. The fourth factor as well, the harm or the prejudice going forward, the harm going forward. Will this reduce the burden? Clearly, there's just no question it would reduce the burden. So those two are easy questions, Your Honor. And prejudice to the non-movement, non-petitioner. Here, the district court found no prejudice. The court found that we were seeking a tactical advantage, but the only thing the court pointed to is timing the filings of things, and we have explanations for that. Alice came out later, Your Honor. We weren't acting in a way to try to hijack the system in any way. I know you don't want to throw Mr. Perry and his client under the bus, but is there enough of a distinction between Apple's circumstances and Samsung's circumstances to possibly justify a different result? Before the, in all honesty, Your Honor, before the ruling on the new trial of damages, I think I would say there was a distinction, enough of a distinction. But they are now facing a large trial too, and it really tilts the balance when you look at Factor 1 and the burden going forward for them. But for us, there's no question. We have a full-on trial, and we have to take a... What, six days? How much time? The verdict in this case is substantial, Your Honor, and we're taking it very seriously. I know, I'm just trying to, how much trial time does the court... We usually get about 12 to 14 hours per side. It hasn't been decided yet. But the trials are six to seven days. We're going to ask for a little bit more time because we have foreign language defendants. We'll have to use translators, and we have more accused products than in the Apple case, Your Honor. So those things haven't been resolved yet by the district court. So I'm eating into my rebuttal time. Unless there's any other questions, I'll sit down. We'll save your rebuttal time, Mr. Burroughs. Thank you. Thank you. Mr. Caldwell. Your Honor, may I take a second to refill my water? Thank you. May it please the court. Samsung, in this case, did seek a tactical advantage despite what the court has just heard, and something I'd like to clarify. You heard that Samsung moved for a stay back in May of 2014 based on Apple's non-Section 101 CBM petitions. Your Honor, what you didn't hear is that what Samsung actually moved for in that instance was that they would be bound by the outcome of Apple's CBMs only if the court granted their stay that was contingent upon the court granting Apple's stay. Samsung wanted no part of actually being bound, just collaterally stopped and signing on to Apple's CBMs if possible. And instead, they waited until the very end, right up against the deadline for when the patent office would have to give a go or no-go decision on Apple's first CBMs before Samsung filed its own. And what was wrong with that? Well, what happened was they were certainly aware of all the same prior art that Apple was. They had already done their invalidity contentions in the case. They had done them well before. They knew all their prior art. They could have filed timely. And instead, what Samsung actually chose to do was to make sure in the event Apple's initial 102 and 103-based CBM petitions were denied that there'd be something still pending, some sort of CBM that's still pending that they could claim to use as a basis for a stay or whatever. You're saying they shouldn't have done that? Your Honor, I'm saying looking at the factors that we have when we're analyzing a stay, certainly they're not barred since there's not a time bar. What I'm saying is the factors absolutely contemplate that you try to invoke the process early as an alternative to litigation. You don't try to seek a tactical advantage waiting until the last... I would think if you've got multiple defendants that there must be a dance among the defendants because you don't want to be the first one to jump on a CBM because then you're not stuck with the estoppel, but you could end up getting the benefit of the patent being wiped out. Well, and I would suggest that if instead of trying to invoke the system timely to avoid litigation expense, you're ensuring that you're driving down two expensive parallel highways at some point in this case. You're not actually availing yourself of the intended purpose of the CBMs to try and minimize expense. If what you do is try to do this tactical dance, you go first, we'll go second, and what we've seen from the Joint Defense Group here is that now this dance has gotten us up to 48 CBMs. Well, then that's your reasoning that the court should have stayed Samsung even if they didn't stay Apple. I'm sorry, Your Honor? On the reasoning you're talking about the equities and the commitment and the investments. So on your reasoning, the court should have agreed to a stay for Samsung whether or not they did so for Apple. No, absolutely not. I think what happened actually is Samsung could have raised the 101 petition, but they certainly could have raised the 102, the 103 as well. You're saying that if they had raised it, then they would have been entitled to a stay? Well, what I'm saying is similar to with Apple, both of these defendants, both Apple and Samsung, have told the court they knew of their 101 defense as of their answer, and they should have moved it timely, and then when analyzing the factors carefully as Judge Gilstrap did, he may have come to a different result. If it appeared that the stay or denial thereof would simplify the issue of the question and streamline trial, and Factor 2 just came up in the argument there and was the subject of some discussion, I think it's important not to lose sight of the fact that what Factor 2 says, whether discovery is complete and whether a trial date has been set, plainly by the language of that factor, even when a court is weighing whether or not to grant a stay, you're envisioning that the trial is sometime in the future and you're looking at issues like, have we done our discovery? Have we incurred that expense already? But then also, has the trial even been set? And at this point, by the time the parties moved for stay, we were months after what had been the trial date setting since the beginning of this case, which is January of 2015, and both cases proceeded towards that, even having combined pretrials and everything. And I believe that it's the defendants, both Samsung and Apple, who tactically chose to wait. In Samsung's case, they waited not only on the 101s, but they waited on invalidity based on anticipation and obviousness as well. They waited very, very late in the process to guarantee that running alongside their petitions for CBM, they were actually moving for summary judgment of invalidity based on anticipation and obviousness and tracking that in the district court, writing those briefs at essentially the time they were filing their petitions for CBM on 102, 103, and 101. And that made it essentially impossible to gain the efficiencies that were envisioned by the CBM provisions. How much time did the trial court allot for the damages retrial? He's not set a number of hours for the damages retrial yet. I know you asked about the length of trial. I don't know if you're curious about what it was in the actual trial that's already taken place on that, but he hasn't set a number of hours per side. What was it, five days, six days? It ended up being a Monday, Tuesday, Wednesday, Thursday, Monday, Tuesday. So I think the evidence ran through five full business days, and then I want to say arguing the charge and instructions ended up being on the sixth day. So Mr. Verhoeven makes the point that all claims that are at issue have been found preliminarily invalid in the PTAB proceedings. They haven't been found preliminary invalid. They have decided to institute based on their standard. But the thing I think we're forgetting is this 101 question is a question of law, and Judge Gilstrap and the magistrate working with Judge Gilstrap have both looked at it and determined that these claims are claiming patentable subject matter. And Apple, I realize we're in the same time appeal, but just so the Court's aware, Apple asked the Court to revisit that post-trial, and we got an order yesterday indicating that the Court won't. We actually have in this case a final ruling from Judge Gilstrap that he found the various claims to be patent-eligible subject matter. So looking only at the factor that the Patent Trials and Appeals Board has decided to institute is an incomplete picture. But it is true that like the Supreme Court taking cases, the odds are they're going to reverse if the PTAB takes at least statistically so far the odds are that they're going to find the patent to be invalid. I think the statistics would show that they have done that, but I think if the natural result of that, if I'm understanding it correctly, would be basically to assume you have an automatic say once they institute. Because despite the difference in the standard of institution versus the standard of actually concluding that the claims are invalid, if what we were going to do was just say, well, a decision to institute is tantamount to a final decision that these are invalid, well, then we'd look at the factors entirely differently. But that's not what the factors say, and it wouldn't be just to look and say, well, in the past on other claims and other patents, the Patent Office has invalidated once they've instituted CBM, therefore we should stay in this case. I don't think that would be appropriate at all. And this instance is not like in virtual agility where this court suggested that the district court, it's not the district court's job to engage in some collateral attack of the decision to institute by the Patent Trial and Appeals Board and say, well, listen, I'm not going to stay you because I've looked back at why they instituted and I think they were wrong. And that's not at all what Judge Gilstrat did here. What he did is at the defendant's urging, they asked him to rule on Section 101, the question of law, as it came up in the case when they filed the motion for summary judgment. And he did. He already had that ruling determining that these claims do cover patentable subject matter well before their request for a stay was ever on file. And the fact that he had gone through that exercise and had the one trial we've already talked about was necessitated based on how late it was that the defendants waited to request Patent Trial and Appeals Board's review under 101. I would like to point out to the court, I think it's clear in the briefs, but Samsung has, although they're here telling you today, it would have been unreasonable or irresponsible for us to have moved on 101 with the Patent Trial and Appeals Board until Alice. The Supreme Court affirmed Alice, and as the court recognized, I believe Judge O'Malley was observing, that these arguments related to patentable subject matter were being raised in virtually every case, especially anything that has anything to do with computers and some parts of it are implemented through code. They were being raised in all these cases. This wasn't a shock that there were continuing to be developments in this area of the law, and the defendants pled it. Samsung and HTC, they pled it in their answer, and in defense to Samsung, the allegations that Samsung's infringement was willful, they told the court, we've always had this one-on-one defense. We've had that since the very, very beginning. But in fairness, you know the Supreme Court is about to rule. There's only so much time left in which the Supreme Court has to rule during that term, and so why not wait to see what the law of the land is really going to be? Well, to get to the point where you know that the Supreme Court's about to rule, you've already waited until this case has been proceeding for over a year. So I agree with you that at some point, they could say, well, it's bound to be imminent any day they will get this ruling. However, CBM petitions were always an option to Samsung and the other parties in these cases, given the timing of the filing of this case. And they could have raised it at any time, particularly since they, more than a year, approximately a year before the Alice opinion came out, they were already contending they had a one-on-one defense to these claims. They could have raised it at any time. And I've heard the argument that it would have been irresponsible to file the CBM before, but I'm having trouble understanding what that is supposed to mean. And I say that because statutory estoppel in covered business method reviews only attach based on proceedings that are instituted, on the issues on which they're instituted. So if it is Samsung's contention, they always had these one-on-one defenses, but they wanted to wait around for a year or so to see if they got more clarity from the Supreme Court and not doing so would be irresponsible. How? There wouldn't have been statutory estoppel, and if they already believed in it, they should have filed earlier. And one thing that we know, these parties are not reluctant in the slightest to file serial CBMs against these patents. Mr. Verhoeven observed to the district court in a hearing that that's one of the great things about the CBM. If they kick you out, you can just rejigger your application and file it again. And so to base now that, well, we were justified in... Well, from a defendant's standpoint, that's true, right? Well, these defendants certainly believe that's true. And what's happening as a result is any potential efficiency that could be gained by using CBM proceedings as an alternative to litigation are being absolutely... There are a lot of problems with how these proceedings work, but we have to just look at what Congress gave us, not whether it's going the way Congress anticipated. Well, I think that's right. However, I also hear the other side arguing, well, we've got to look at congressional intent. And although the factors absolutely do not say a stay is automatic and you should automatically enter a stay, although the factors don't say that, you should, because what they really meant was CBM should be used to make the decision in the first instance. What they really meant was to move these decisions from the courts to the patent office, and that's what we're being asked to do? I think that... Well, I think what Congress intended, my understanding of what Congress intended is not that district courts can never decide these issues. And I think if that were the case, the statutory factors would say so. Well, they'd have a constitutional problem, so they went as far as they could. I agree with you, that would be a constitutional problem. But even so, I'm not sure that they went as far as they could, because these factors give criteria by which the district courts and this court can look at the issues on the stay. And I agree with some of the questions, the implications of some questions from Judge O'Malley. We can't just stop and focus on one factor. There are several of them, and that's why the district court's opinion, which is very thorough and carefully weighed each of these factors, found none of them supported a stay for these parties. But doesn't this give them at least a stronger equitable position than Apple, for example, because they haven't had the trial? I think if you were to put the equities for Apple and the equities for Samsung on the scales of justice and you envision that a feather's going to make it tilt one way or the other, I do believe the implication of what you're saying is absolutely right. It's got to be stronger in Apple because more has been done. That said, I don't think that either one of them in these circumstances results in you granting a stay, that being the appropriate outcome, excuse me, And I think actually by reference, if we're going to compare the factual situations of different cases, let's look at the broader picture of Apple, Samsung, and Google and Amazon. Google and Amazon, even though they hadn't even filed CBMs, but what the district court did, trying to diligently follow the law, actually told them, guys, if you're going to contend that you need a stay because of the overlapping issues and the fact that there are CBMs that are instituted, you guys need to move now. That order came out in the Amazon and Google case and got in all of this evidence and decided that based on the four factors that we have in the AIA, that Amazon and Google should be stayed. But when carefully weighing those four factors, Judge Gilstrap concluded that in the case of Samsung, and I think even slightly more so in the case of Apple, these factors do not weigh in favor of a stay. Putting aside the CBMs, wouldn't it make some sense, given that there's supposedly such an overlap between the issues in Apple and the issues in Samsung, to just stay the Samsung trial pending an appeal in Apple? Well, I think that that outcome makes more sense than staying pending the CBMs, where we take a decision that has merely been instituted and essentially start that challenge all over again. I do think it makes more sense than that. But that was never suggested to the judge? Well, I believe, actually, I could be wrong with this. I don't mean to misquote something. I believe one thing that we presented to the judge in our papers were, we don't believe any stay should be granted. However, if a stay were granted in any of the non-Apple cases, it would certainly make more sense to get the Apple case packaged up and sent to this court, because the 101 issue is a question of law that can be reviewed coming out of the district court, it can be reviewed here. We did, I believe, suggest that that actually would make more sense than putting all of the very advanced district court proceedings on hold in order to essentially start the process over again through the patent trial and appeal board. Okay, any more questions? Any more questions? Thank you, Mr. Caldwell. Well, I can say, Your Honor, that we're willing to have a stay pending the Apple appeal. Just for the record, I do believe we argued, we mentioned that to the district court.  I think it's part of our reasons for doing so. We also mentioned the Apple appeal and the factor that you raised, Your Honor. This is outside the record, so if you don't feel comfortable answering it, you don't have to. But are the infringement defenses substantially different between Apple and Samsung? Well, there's different accused technologies, yes. And in our case, unlike the Apple case, there's three separate different accused technologies. So it's a lot more work we're going to have to do. I believe they only had one accused technology. So we have three different independent systems that we're going to have to defend. But aren't the patents the same? Make sure I understand. They're the same patents, isn't that right? They're the same patents, I believe, yes. But they might be different. In fact, they are different asserted claims. I'm not sure exactly why, but the plaintiff, SmartFlash, dropped from our case all of the claims at issue in the Apple case, but asserted other claims from all the same patents. So we have different claims from the Apple case, intentionally by their election after they got the verdict. But the patents are the same, and the claims are basically the same. They just pick different claims within the same patents, Your Honor. But the technologies are different, and there's three different technologies. There's one for HTC. There's one for SmartFlash. I want to be sure I understand. I thought the claims they dropped were the ones that had been invalidated by the PTAB. After the SmartFlash verdict, SmartFlash indicated that they were dropping the claims they went to trial on against Apple in the SmartFlash case. And were instead relying on other claims against us from the same patents, but not the claims they tried in the Apple case. Okay. Now, I can speculate as to why they did that. Your Honors can speculate as to why they did that, but that's what happened. I thought you were taking us way outside the thread. That's okay, Your Honor. Counsel tried to suggest that we were somehow nefarious in our timing of filing these. I've already argued this a little bit, but there was no, okay, Apple, you do something, and then we'll take turns doing something else. We joined Apple's CBMs. And it doesn't make sense to inundate the patent office if you have five defendants with similar invalidity defenses or ineligibility defenses to all file. It makes sense to have one file, and then you can join, tell the court you'll be bound by it if it stays. And that's what we did, Your Honor. So we didn't sort of tag team the plaintiff here by any means. We joined in their 102 and 103 reasons. We didn't have what we thought was a weeding 101 that we wanted to spend the money and go into before Alice. Plus, we were waiting to see what was going to happen in the Alice case. And so when Alice changed the law, in our view, then we proceeded with due diligence to get these giant submissions together that relied on 101. And one of the things, Judge O'Malley, that I neglected to ask when we were debating whether you should measure, where you should measure the status of the case, the stage of the case, is that, in fact, our stay is based for one of the asserted patents on CBMs filed in the very first Apple CBMs, Your Honor. So it does relate back as to one of the asserted patents here. That's not 101. That's based on other grounds. But that's still live, and that's still going forward in the CBM. Was CBM granted on that? It was instituted on that, Your Honor. At the same time that the 101 was instituted? No, it was on a separate track. Was it the same time? It was earlier. It was earlier on a separate track, but it's still proceeding. It was denied on their other grounds. It wasn't instituted. But you didn't renew your motion at the time of the institution? No, because we wanted to wait. The judge indicated to us when he denied our preliminary stay, it was very clear from his order, that he wasn't going to grant anything unless there was institution. And so we waited until we felt that we had good evidence that this was going to institute in a way that would kill the whole case at the PTO or likely be a good thing. And once that happened, we moved within days to stay. Once we got the institution on... When did it come to the 101? Yes, Your Honor. But not on the other one, because that's one of five patents. And so, you know, we knew what would happen if we moved to stay then. So we waited until we had a good argument. And we didn't delay. Alice came out, and we acted reasonably diligently. We had lots of moving parts when we have these cases going along in peril. We had deadlines in the district court we had to deal with. So it did take us a couple of months, a few months, to get those on file. And we serially filed them. We didn't wait and file them all. We filed the first one as soon as we finished it. We filed the next one as soon as we finished it. And then as soon as they instituted, they instituted on, I think, four. And within a couple of weeks, I think, we filed, or even a couple of days, we filed our motion to stay. So this is not a situation where we sought a tactical advantage. And to answer the question, we're not taking the position that stay is automatic here. We agree with Apple's counsel. In rare circumstances, it shouldn't happen. In those circumstances, for example, if you had an irreparable injury because it's competitor on competitor, and a delay will cause a big problem. If you have a situation, Judge O'Malley, like only one of the five patents was instituted on. Well then, that's a different situation than us. Here, all asserted claims have been instituted. And we know the track record. And it's just no question that Congress intended in this situation the PDO to handle this and not the district courts. And we suggest then that Your Honor should reverse the district court and stay the case. Thank you, Mr. Verhoeven and Mr. Caldwell. The case is taken under submission. That concludes the arguments for this afternoon. All rise.